# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MATHEW T. LINTS, an individual. <br><br> Plaintiff, <br><br> v. <br><br> GRACO FLUID HANDLING (A) INC., a Minnesota corporation, WHITE KNIGHT FLUID HANDLING, a Utah DBA, WHITE KNIGHT FLUID HANDLING, LLC, a Utah limited liability corporation, SIMMONS HOLDINGS, INC., a Utah corporation, and JOHN DOES 1-5, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> • **Denying [72] Defendants' Motion for Summary Judgment; and** <br> • **Granting in Part and Denying in Part [71] Plaintiff's Motion for Partial Summary Judgment** <br><br> Case No. 2:15-cv-00655-DN <br><br> District Judge David Nuffer |

Plaintiff Mathew Lints ("Lints") alleges claims of sexual harassment and retaliation against Defendants Graco Fluid Handling (A) Inc., White Knight Fluid Handling, White Knight Fluid Handling, LLC, Simmons Holdings, Inc., and John Does 1-5 (collectively, "White Knight").[1]

White Knight filed a Motion for Summary Judgment[2] on both of Lints's claims, which has been fully briefed.[3] White Knight primarily relies upon statements made by Lints to demonstrate that even if he had been subject to sexual harassment, White Knight took action and the behavior stopped. Lints attempts to back away from these statements, creating credibility

---

[1] Second Amended Complaint, docket no. 33, filed Mar. 9, 2017.

[2] Motion for Summary Judgment on Plaintiff's Complaint ("Defendant's Motion for Summary Judgment"), docket no. 72, filed Apr. 13, 2018.

[3] Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition to Summary Judgment"), docket no. 85, filed May 18, 2018; Defendants' Reply in Support of Motion for Summary Judgment on Plaintiff's Complaint ("Defendants' Reply"), docket no. 90, filed June 1, 2018.

issues. However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[4] Therefore, White Knight's Motion for Summary Judgment[5] is DENIED.

Lints also filed a Motion for Partial Summary Judgment[6] with respect to White Knight's affirmative defenses. White Knight responded.[7] Lints replied.[8] Based upon the undisputed facts, dismissal is appropriate on some of White Knight's affirmative defenses because they either do not apply or are not supported by any proof. Therefore, Lints's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

---

[4] *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[5] Docket no. 72.

[6] Plaintiff's Motion for Partial Summary Judgment, docket no. 71, filed Apr. 13, 2018.

[7] Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Opposition to Partial Summary Judgment," docket no. 76, filed May 11, 2018.

[8] Reply in Support of Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Reply"), docket no. 89, filed May 25, 2018.

**Contents**

Undisputed Material Facts ...................................................................................... 3
    Employment and Sexual Harassment at White Knight ...................................... 3
    Lints's Employment History after White Knight ............................................... 8
    EEOC Proceedings and Current Litigation ..................................................... 10
Summary Judgment Standard ............................................................................. 14
Discussion ........................................................................................................... 15
    White Knight' Motion for Summary Judgment ............................................... 15
        Genuine issues of material fact exist regarding Lints's claim for hostile work
            environment sexual harassment ............................................................ 15
        Genuine issues of material fact exist regarding Lints's claim for retaliation ....... 19
    Lints's Motion for Partial Summary Judgment ................................................ 21
        Lints has stated a claim upon which relief can be granted warranting summary
            judgment on White Knight's second affirmative defense........................ 21
        Lints timely filed his Complaint warranting summary judgment on White
            Knight's third defense of failure to file within the limitation period........ 22
        Lints's claims are not barred under the doctrine of estoppel or laches, warranting
            summary judgment on White Knight's eight defense.............................. 23
        To avoid confusion, summary judgment is appropriate on White Knight's tenth
            defense ................................................................................................ 25
        White Knight did not contest summary judgment on its fourth, seventh, and ninth
            affirmative defenses, therefore summary judgment on these defenses is
            appropriate. ......................................................................................... 25
        White Knight's fifth, sixth, and eleventh defenses survive summary judgment. . 26
Order… .............................................................................................................. 28

**UNDISPUTED MATERIAL FACTS[9]**

**Employment and Sexual Harassment at White Knight**

1.     White Knight hired Lints on January 22, 2010.[10]

2.     Lints alleges that he was subject to the following unwelcome sexual harassment

by his co-worker, Nicole Mondragon:

---

[9] The following Undisputed Material Facts are taken from the facts asserted in the parties' briefing. All material facts asserted by the parties for which no dispute was raised are considered undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2).

[10] Defendants' Motion for Summary Judgment ¶ 1 at 3; Second Amended Complaint ¶¶ 3, 6, 21, docket no. 33.

a. On his first day of employment at White Knight, Ms. Mondragon asked Lints if he was married or had a girlfriend.[11]

b. On his second day, Ms. Mondragon asked Lints if he was Mormon and if he wore garments.[12]

c. Ms. Mondragon then "started wearing perfume and makeup" and "being flirtatious."[13]

d. Ms. Mondragon "would walk by [Lints] more often" and "find excuses to be within [his] presence."[14]

e. She would wear her shirt "loosely buttoned" and "find excuses to bend over in front of [Mr. Lints], revealing her breasts."[15]

f. Ms. Mondragon wore "G strings" and sweatpants that "were rolled past her hips, and when she would squat down her underwear would show." "She would hike [her underwear] up past her sweatpants."[16]

g. Ms. Mondragon would also walk past the area where Lints was working and "rub her breasts or buttocks against Lints," between two to five times per day.[17]

---

[11] Defendants' Motion for Summary Judgment ¶ 6 at 4; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A, Deposition of Mathew Lints ("Lints Depo.) at 97:3–5.

[12] Defendants' Motion for Summary Judgment ¶ 7 at 4; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A, Lints Depo. at 97:6–9.

[13] Defendants' Motion for Summary Judgment ¶ 8 at 4; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A, Lints Depo. at 98:13–17.

[14] Defendants' Motion for Summary Judgment ¶ 9 at 5; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A, Lints Depo. at 99:1–7.

[15] Defendants' Motion for Summary Judgment ¶ 10 at 5; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A, Lints Depo. at 98:23–24.

[16] Defendants' Motion for Summary Judgment ¶ 11 at 5; Plaintiff's Opposition to Summary Judgment at 3; *Id*., Exhibit A. Lints Depo. at 101, 4–8.

[17] Defendants' Motion for Summary Judgment ¶ 12 at 5; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 124:2–9, 125:15–21.

h. Ms. Mondragon tried to insist that Lints allow her to give him a ride home in her car.[18]

i. Approximately two and a half weeks after Lints began working at White Knight, Ms. Mondragon "walked up behind [Lints] and pressed her breasts into [his] back and reached around and gave [him] a hug and stared rubbing [his] chest." While doing so, Ms. Mondragon asked Lints why he was "not interested in dating her and having a relationship with her."[19]

j. Ms. Mondragon walked up to Lints and another male co-worker, "jiggled her breasts" and said, "hey guys, do you think if I got my breasts enlarged, I could get laid?"[20]

3. Ms. Mondragon was not Lints's supervisor.[21]

4. Ms. Mondragon did not have any actual or implied authority over Lints.[22]

5. During his first two to two-and-a-half weeks at White Knight, Lints complained to the two individuals that he believed to be his supervisors—Josh Simmons and Spencer Nauman—about Ms. Mondragon's behavior.[23]

---

[18] Plaintiff's Opposition to Summary Judgment at 18; *Id.*, Exhibit A, Lints Depo. at 101:21-102:11, 132:5–133:4–16.

[19] Defendant's Motion for Summary Judgment ¶ 13 at 5; Plaintiff's Opposition to Summary Judgment at 4; *Id.*, Exhibit A, Lints Depo. at 102:13–19.

[20] Defendant's Motion for Summary Judgment ¶ 15 at 5-6; Plaintiff's Opposition to Summary Judgement at 3; *Id.*, Exhibit A, Lints Depo. at 115:18–116:9, 129:18–25.

[21] Defendant's Motion for Summary Judgment ¶ 3 at 4; Plaintiff's Opposition to Summary Judgement, Exhibit A, Lints Depo. at 91:7-17.

[22] Defendants' Motion for Summary Judgment ¶ 4 at 4; Plaintiff's Opposition to Summary Judgement, Exhibit A, Lints Depo. 91:7-17.

[23] Defendant's Motion for Summary Judgment ¶¶ 17-18, 21 at 6-7; Plaintiff's Opposition to Summary Judgment at 19; *Id.*, Exhibit A, Lints Depo. at 106:6-12, 109:11-14, 126:24-127:3, 128:7-12. White Knight asserts that Mr. Nauman was Lints's sole supervisor or manager and that Mr. Simmons was merely a co-worker. Defendant's Motion for Summary Judgment ¶ 19.

6. Lints also "think[s]" that he talked to Mr. Nauman "or somebody" again about Ms. Mondragon's behavior. After which, Ms. Mondragon's "strong advancements were . . . not as strong as they once were."[24]

7. On or about April 27, 2010, Lints asked Mr. Nauman to intervene in an incident that occurred between Ms. Mondragon and Lints while Ms. Mondragon was training Lints on a piece of machinery. When Mr. Nauman failed to do so, Lints approached Karen Bastian (who Lints believed to be the director of human resources) to report that he was being subjected to unwanted sexual advances by Ms. Mondragon.[25]

8. Ms. Bastian called one of the owners of White Knight, Tom Simmons, to meet with Lints.[26] At that time, Lints repeated the details of Ms. Mondragon's behavior to Mr. Simons.[27] Lints specifically told Mr. Simmons that he had been sexually harassed by Ms. Mondragon.[28]

9. On April 28, 2010, Mr. Simmons called Lints into his office. Mr. Simons asked Lints about Ms. Mondragon's behavior that Lints considered to be sexual harassment.[29]

10. Lints told Mr. Simmons that Ms. Mondragon had not sexually harassed him again after Mr. Nauman had talked with her two months prior.[30]

---

[24] Defendant's Motion for Summary Judgment ¶ 22 at 7; Plaintiff's Opposition to Summary Judgment at 8; *Id.*, Exhibit A, Lints Depo. at 129:10-21.

[25] Defendants' Motion for Summary Judgment ¶ 23 at 7, ¶ 41 at 10; Plaintiff's Motion for Partial Summary Judgment at 8,15, 20; *Id.*, Exhibit A, Lints Depo. at 86:16-88:13, 116:11-14, 120:20-24, 135:2-136:1; Defendants' Opposition to Partial Summary Judgment ¶ 2.

[26] Second Amended Complaint ¶ 36, docket no. 33; Opposition to Summary Judgment at 21; *Id.*, Exhibit A, Lints Depo.at 1385-139:4, 144:20-21, 144:22-26.

[27] Plaintiff's Opposition to Summary Judgment at 15; *Id.*, Exhibit A, Lints Depo. at 138:5-139:4, 144:20-21, 144:22-16, 146:13-16.

[28] Plaintiff's Opposition to Summary Judgment at 21; *Id.*, Exhibit A, Lints Depo at 146:13-16.

[29] Defendants' Motion for Summary Judgment ¶ 42 at 10; Plaintiff's Opposition to Summary Judgment at 16.

[30] Defendants' Motion for Summary Judgment ¶ 45 at 11; Plaintiff's Opposition to Summary Judgment at 9, 16.

11.     Lints stated that his "main concern" was that Ms. Mondragon did not treat him "great" like everyone else at White Knight.[31]

12.     Lints alleged that Ms. Mondragon "verbally attacked" him during the April 27, 2010 incident and that she had been "gossiping" about him.[32]

13.     Mr. Simmons told Lints:

> People being mean and not getting along, that is a lot easier to deal with. Accusations of sexual harassment are a big deal and can land people in court and it can be a real pain in the neck and real expensive and it just causes trouble.[33]

14.     Mr. Simmons then moved on to discussing Lints's absences from work and terminated Lints.[34]

15.     During the time that he was employed by White Knight, Lints missed 13 days of work. Of those days, 11 were due to illness. Lints called either Mr. Simmons or Mr. Nauman each day that he was sick to tell them that he would not be coming in to work.[35]

16.     Lints missed work for the remaining 2 days due to personal reasons. Each time, Lints requested and received permission from Mr. Nauman to be absent.[36]

17.     When Lints returned to work from his last absence for illness, Mr. Nauman told him that "if [he] missed anymore work that [his] job may be in jeopardy." Mr. Nauman also told

---

[31] Defendants' Motion for Summary Judgment ¶ 46 at 11; Plaintiff's Opposition to Summary Judgment at 17.

[32] Defendants' Motion for Summary Judgment ¶ 47 at 11; Plaintiff's Opposition to Summary Judgment at 17.

[33] Plaintiff's Opposition to Summary Judgment, Exhibit B, Defendants' Objections and Responses to Plaintiff's Second Set of Requests for Admissions, Response No. 11.

[34] Defendant's Motion for Summary Judgment ¶ 48 at 11; Plaintiff's Opposition to Summary Judgment at 8-9; Second Amended Complaint, ¶¶ 38-40.

[35] Defendant's Motion for Summary Judgment ¶ 36 at 9; Plaintiff's Opposition to Summary Judgment at 21; *Id.*, Exhibit A, Lints Depo. at 155:15-24.

[36] Plaintiff's Opposition to Summary Judgment at 21; *Id.*, Exhibit A, Lints Depo. at 158:21-160:7.

Lints that "he wasn't blaming [Lints] for being sick but if he saw a repeated pattern in [Lints's] missing days of work then [they] would have to discuss other options."[37]

18.     In response to Lints's discovery requests, White Knight did not identify any specific steps or actions taken to investigate Lints's complaints regarding Ms. Mondragon's behavior.[38]

19.     After Lints's termination, White Knight circulated a notice to its employees stating that "[o]n April 27, 2010, an employee of White Knight made a claim of sexual harassment that upper management had not been aware of until that time."[39]

20.     White Knight's first documented verbal warning to Ms. Mondragon regarding her behavior (that White Knight was able to locate as part of these proceedings) was issued on April 30, 2010 and the first documented written warning was issued on July 15, 2010—after Lints's termination.[40]

### Lints's Employment History after White Knight

21.     After his termination from White Knight, Lints got a job in June 2010 that lasted for approximately two months. Lints was fired from that job because he failed to show up for work one day.[41]

---

[37] Plaintiff's Opposition to Summary Judgment at 21; *Id.*, Exhibit A, Lints Depo. at 172:23- 173:1, 201:12-16, 203:18-204:10.

[38] Plaintiff's Opposition to Summary Judgment at 21; *Id.*, Exhibit C, Defendants' Objections and Responses to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, Answer to Interrogatory Nos. 3, 5.

[39] Plaintiff's Opposition to Summary Judgment at 22; *Id.*, Exhibit H, Apr. 28, 2010 Notice; *Id.*, Appendix of Evidence, Exhibit C, Defendants' Objections and Responses to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, Response No. 23.

[40] Plaintiff's Opposition to Summary Judgment at 4, 23; *Id.*, Exhibit B, Defendants' Objections and Responses to Plaintiff's Second Set of Requests for Admission, Responses Nos. 21, 22. *See also* Defendant's Reply at 3-4.

[41] Defendants' Opposition to Partial Summary Judgment ¶ 15 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 37:1-13, 3:1-7; Reply in Support of Plaintiff's Motion for Partial Summary Judgment at 3.

22.     After that, Lints began painting or pulling weeds for friends and family.[42]

23.     Lints then worked from January 2011 through April 2011 at Park City Lodging.[43]

24.     Lints was next employed from September 2012 to November 2012 as a house painter.[44]

25.     He then worked for TruCo (snow removal) from approximately December 2012 through April 2013.[45]

26.     Lints then worked at Trading Places Hotel in Park City as a maintenance painter for "a couple weeks" until he quit in June 2013.[46]

27.     Lints next worked for Wildfire Landscaping for two months in 2013 and two months in 2014.[47]

28.     In June 2014, Lints moved to Wisconsin to "to focus 100 percent on [his] long track speed skating goals."[48]

29.     At the time of his deposition on December 7, 2017, Lints was unemployed.[49]

---

[42] Defendants' Opposition to Partial Summary Judgment ¶ 16 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 39:16-40:9; Reply in Support of Plaintiff's Motion for Partial Summary Judgment at 3.

[43] Defendants' Opposition to Partial Summary Judgment ¶ 17 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 41:17-19; Reply in Support of Plaintiff's Motion for Partial Summary Judgment at 3.

[44] Defendants' Opposition to Partial Summary Judgment ¶ 18 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 46:5-7; Plaintiff's Reply at 3.

[45] Defendants' Opposition to Partial Summary Judgment ¶ 19 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 48:17-21-50:13; Plaintiff's Reply at 3.

[46] Defendants' Opposition to Partial Summary Judgment ¶ 20 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 50:22-51:5; Plaintiff's Reply at 3.

[47] Defendants' Opposition to Partial Summary Judgment ¶ 21 at 9; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 61:6-24; Plaintiff's Reply at 3.

[48] Defendants' Opposition to Partial Summary Judgment ¶ 22 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 61:25-62:3; Plaintiff's Reply at 3.

[49] Defendants' Opposition to Partial Summary Judgment ¶ 23 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 28:18-20; Plaintiff's Reply at 3.

30.     Lints does not recall filing for unemployment after his employment ended at White Knight (or any of the other subsequent companies he worked for).[50]

31.     Lints also testified that he received income from speed skating sponsorships.[51]

32.     When asked the amount of sponsorship income he received, Mr. Lints replied "I don't remember. It was mostly hit and miss fundraising."[52]

33.     Lints does not have records that would show what those amounts were.[53]

34.     Lints's total reported income in 2010 was $4,491 in (which included the income he made the first four months of the year working for White Knight). Lints's total reported income was $6,983 in 2011; $2,555 in 2012; $9,041 in 2013; $9,863 in 2014; and $9,344 in 2015.[54]

## EEOC Proceedings and Current Litigation

35.     Lints filed his charge with the U.S. Equal Employment Opportunity Commissioner (EEOC) on November 17, 2010.[55]

36.     In 2014, White Knight sold some of its assets to Graco Fluid Handling (A) Inc.[56]

37.     On February 4, 2014, Lints requested a Notice of Right to Sue from the EEOC.[57]

---

[50] Defendants' Opposition to Partial Summary Judgment ¶ 24 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 53:22-54:19; Plaintiff's Reply at 3.

[51] Defendants' Opposition to Partial Summary Judgment ¶ 25 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 30:11-17; Plaintiff's Reply at 3.

[52] Defendants' Opposition to Partial Summary Judgment ¶ 26 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 30:18-22; Plaintiff's Reply at 3.

[53] Defendants' Opposition to Partial Summary Judgment ¶ 27 at 10; Plaintiff's Opposition to Summary Judgment, Exhibit A, Lints Depo. at 31:1-3; Plaintiff's Reply at 3.

[54] Defendants' Opposition to Partial Summary Judgment ¶ 28 at 10; *Id.*, Exhibit D, Lints's Tax Returns; Plaintiff's Reply at 3.

[55] Defendants' Opposition to Partial Summary Judgment ¶ 29 at 10.

[56] Defendants' Opposition to Partial Summary Judgment ¶ 34 at 11.

[57] Defendants' Opposition to Partial Summary Judgment ¶ 30 at 10.

38.     On September 24, 2014, the EEOC issued a determination letter with respect to Lints's Charge of Discrimination.[58]

39.     The EEOC issued a Notice of Right to Sue on June 15, 2015. The notice stated that Lints must file his lawsuit "within 90 days of receipt of this letter and Notice of Right to Sue."[59]

40.     On September 11, 2015, Lints initiated this action.[60] Lints has asserted claims for sexual harassment and retaliation against White Knight.[61]

41.     With leave of the court,[62] Lints filed a Second Amended Complaint on March 9, 2017.[63]

42.     Lints's First Cause of Action states that "White Knight, directly and through employees and agents, subjected [Lints] to unlawful sexual harassment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., in that [Lints's] acceptance of harassment by [White Knight] was an express and implied condition to the receipt of certain job benefits, and [White Knight's] harassment of [Lints]was the cause of tangible job detriments to [Lints]. . . . The acts of [White Knight] described above also created a hostile and sexually offensive working environment for [Lints]."[64]

---

[58] Second Amended Complaint ¶ 46; Answer ¶ 46, docket no. 38, filed Mar. 30, 2017.

[59] Defendants' Opposition to Partial Summary Judgment ¶ 31 at 11; *Id.*, Exhibit F, Notice of Right to Sue and cover letter.

[60] Complaint, docket no. 2, filed Sept. 11, 2015.

[61] Second Amended Complaint at 5, 7, docket no. 33, filed Mar. 9, 2017.

[62] Docket Text Order Granting [27] Motion to Amend/Correct [3] Amended Complaint, docket no. 31, entered Feb. 28, 2017.

[63] Second Amended Complaint, docket no. 33, filed Mar. 9, 2017.

[64] *Id.* ¶ 43-44 at 5-6.

43.     Lints's Second Cause of Action claims that "White Knight, directly and through employees and agents, took unlawful retaliatory action against [Lints] in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., in that [White Knight] terminated [Lints's] employment because he complained of sexual harassment and [White Knight's] unlawful employment practices.[65]

44.     On March 30, 2017, White Knight answered the Second Amended Complaint.[66]

45.     In its Answer, White Knight asserted the following defenses:

a.  Second Defense: "[Lints's] allegations fail to state a claim upon which relief can be granted against Defendants."[67]

b.  Third Defense: "To the extent that any of [Lints's] claims were filed outside the applicable limitations period, those claims are barred."[68]

c.  Fourth Defense: "To the extent that [Lints] has failed to satisfy and/or exhaust the statutory, jurisdictional, or administrative perquisites for maintaining any of his claims, those claims are barred."[69]

d.  Fifth Defense: "[Lints] cannot recover damages to the extent that he has failed to mitigate his alleged damages."[70]

---

[65] Plaintiff's Motion for Partial Summary Judgment ¶ 5; Defendants' Opposition to Partial Summary Judgment ¶ 5; Second Amended Complaint ¶ 57 at 7.

[66] Defendants' Answer, docket no. 38, filed Mar. 30, 2017.

[67] Plaintiff's Motion for Partial Summary Judgment ¶ 6; Defendants' Opposition to Partial Summary Judgment ¶ 6.

[68] Plaintiff's Motion for Partial Summary Judgment ¶ 7; Defendants' Opposition to Partial Summary Judgment ¶ 7.

[69] Plaintiff's Motion for Partial Summary Judgment ¶ 8; Defendants' Opposition to Partial Summary Judgment ¶ 8.

[70] Plaintiff's Motion for Partial Summary Judgment ¶ 9; Defendants' Opposition to Partial Summary Judgment ¶ 9.

e. Sixth Defense: "All actions regarding [Lints's] employment were undertaken without malice for legitimate, non-discriminatory, and nonretaliatory reasons."[71]

f. Seventh Defense: "Some or all of [Lints's] claims and/or alleged damages may be barred and/or limited by the after-acquired evidence doctrine."[72]

g. Eighth Defense: "[Lints's] claims are barred, in whole or in part, by the doctrines of waiver, estoppel, release, consent, payment, license, and/or laches."[73]

h. Ninth Defense: "[Lints's] claims are barred, in whole or in part, by the doctrines of setoff and/or recoupment."[74]

i. Tenth Defense: "Graco Fluid Handling (A) Inc. lacks information and belief to admit or deny the allegations of the Second Amended Complaint and accordingly denies the same."[75]

j. Eleventh Defense: "Graco Fluid Handling (A), Inc. should be dismissed from this action, as [Lints] cannot establish liability under a theory of successor liability."[76]

46. In his First Set of Interrogatories, Lints requested that White Knight "identify the factual basis for each of the affirmative defenses stated in [its] Answer." White Knight responded as follows:

---

[71] Plaintiff's Motion for Partial Summary Judgment ¶ 10; Defendants' Opposition to Partial Summary Judgment ¶ 10.

[72] Plaintiff's Motion for Partial Summary Judgment ¶ 11; Defendants' Opposition to Partial Summary Judgment ¶ 11.

[73] Plaintiff's Motion for Partial Summary Judgment ¶ 12; Defendants' Opposition to Partial Summary Judgment ¶ 12.

[74] Plaintiff's Motion for Partial Summary Judgment ¶ 13; Defendants' Opposition to Partial Summary Judgment ¶ 13.

[75] Plaintiff's Motion for Partial Summary Judgment ¶ 14; Defendants' Opposition to Partial Summary Judgment ¶ 14.

[76] Plaintiff's Motion for Partial Summary Judgment ¶ 15; Defendants' Opposition to Partial Summary Judgment ¶ 15.

Defendants object to this Interrogatory on the basis that it seeks privileged attorney-client communications and attorney work-product. Defendants further object to this Interrogatory on the basis that the information sought is vague, and improperly seeks a narrative response. Defendants also object on the grounds that this Interrogatory is ambiguous, given Plaintiffs expansive definition for the terms "you" and "your." Accordingly, Defendants will not provide an answer to this Interrogatory.[77]

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law.[78] A factual dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." In applying this standard, the court must "view the factual record and draw all reasonable inferences therefrom most favorably to the non-movant."[79]

The party moving for summary judgment has the initial burden of showing that there is an absence of evidence to support the non-moving party's case. "The moving party's burden cannot be enhanced to require his proof of a negative, that is, not only is there no evidence in the record, but [a party's] evidence need not be disproved."[80] Once that initial burden is satisfied, the burden shifts to the non-moving party to make a showing sufficient to establish that there is a genuine issue of material fact for trial.[81]

"To defeat a motion for summary judgment, a party cannot merely rest on the allegations contained in the complaint and other filings."[82] Instead, the non-moving party must come

---

[77] Plaintiff's Motion for Partial Summary Judgment ¶ 16; Defendants' Opposition to Partial Summary Judgment, ¶ 16.

[78] *Pumphrey v. Wood*, No. 1:12-CV-115-TS, 2015 WL 1393233, at *4 (D. Utah Mar. 25, 2015).

[79] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[80] *Windon Third Oil & Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 346 (10th Cir. 1986).

[81] Fed. R. Civ. P. 56(a).

[82] *Pumphrey*, 2015 WL 1393233, at *4.

forward with specific facts, supported by materials that would be admissible at trial, showing the existence of a genuine issue for trial.[83] If the non-moving party fails to meet this burden as to one element of a claim, summary judgment is appropriate.[84]

## DISCUSSION

### White Knight' Motion for Summary Judgment[85]

White Knight's motion seeks summary judgment on Lints's claims for sexual harassment and retaliation raised in his Second Amended Complaint.[86] Sexual harassment can be established under either a quid pro quo or a hostile work environment theory.[87] White Knight asserts that the undisputed facts show Lints was not subjected to sexual harassment under either theory.[88] Lints does not dispute that summary judgment should be granted in favor of White Knight on any claim for quid pro quo sexual harassment,[89] leaving Lints's claims for sexual harassment under a hostile work environment and retaliation.

**Genuine issues of material fact exist regarding Lints's claim for hostile work environment sexual harassment**

To establish a sexually hostile work environment, a plaintiff must show that "(1) [he] is a member of a protected group; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness the harassment

---

[83] *Id.*

[84] *Id.*

[85] Defendants' Motion for Summary Judgment, docket no. 72.

[86] Defendants' Motion for Summary Judgment.

[87] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998).

[88] Defendants' Motion for Summary Judgment at 2.

[89] Plaintiff's Opposition to Summary Judgment at 15, n.5. Quid pro quo requires a plaintiff to prove that a tangible employment action resulted from refusal to submit to a supervisor's sexual advances. *Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017). Lints acknowledges that Ms. Mondragon was not Lints's supervisor and therefore, her actions cannot constitute quid pro quo sexual harassment.

altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."[90] For a hostile work environment claim to survive, the harassment must be both objectively and subjectively severe or pervasive, based on the totality of the circumstances.[91] When determining if harassment was objectively severe or pervasive, factors to consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[92] "[T]he 'hallmarks' of a sexually hostile work environment claim [include] overt requests for sexual favors, lewd remarks or sexual comments about [the plaintiff's] body or clothing, jokes of a sexual nature, or display of sexually oriented material."[93] While "a few isolated incidents of gender animus does not establish a pervasively hostile work environment, . . . the pervasiveness of the hostility is quintessentially a question of fact and thus particularly unsuited for resolution on a motion for judgment as a matter of law."[94]

White Knight argues that Ms. Mondragon's behavior was not sufficiently severe or pervasive to constitute an abusive working environment.[95] White Knight acknowledges that "Ms. Mondragon's purported behavior may be considered tasteless and vulgar," but asserts that her behavior does not amount to actionable conduct as a matter of law.[96] Reading the undisputed

---

[90] *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (quoting *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005) (alterations removed).

[91] *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

[92] *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[93] *Miller v. Regents of the Univ. of Colo.*, 188 F.3d 518 (10th Cir. 1999).

[94] *EEOC v. PVNF, LLC*, 487 F. 3d 790, 798 (10th Circuit 2007) (quotations and citations omitted).

[95] Defendants' Motion for Summary Judgment at 21-22, docket no. 72.

[96] Defendants' Motion for Summary Judgment at 2.

facts in a light most favorable to Lints, there is sufficient evidence for a reasonable jury to find

that Mondragon was motivated by sexual desire in her comments and actions towards Lints.

Ms. Mondragon's behavior, while mild compared to other sexual harassment cases,[97] included

lewd remarks, jokes of a sexual nature, and physical touching. Whether these actions rise to the

level of a hostile work environment is a factual question for the jury.

  Even if Ms. Mondragon's behavior constituted sexual harassment, White Knight alleges

that it is not liable because it adequately responded to Lints's claims.[98] To prevail on a hostile

environment sexual harassment claim, an employee must also establish an employer's liability

for the harassing conduct under a negligence theory, which requires a plaintiff to "present

enough evidence for a jury to find that the employer knew or should have known about the

harassment but failed to stop it."[99] "The negligence analysis can be divided into two separate

inquires, looking first into the employer's actual or constructive knowledge of harassment, and

second, into the adequacy of the employer's remedial and preventative responses."[100] White

Knight concedes that they had actual knowledge of Ms. Mondragon's sexual harassment of

---

[97] Defendant cites to *Beseau v. Fire Dist. No. 1*, No. 05-2162-RR, 2006 WL 2795716 (D. Kansas Sept. 26, 2006), and *Matherne v. Ruba Mgmt.*, No. 12-2461-DK, 2014 WL 2938100 (E.D. Louisiana June 27, 2014), as examples of cases where more severe and pervasive conduct than that alleged by Lints was found to not constitute sexual harassment as a matter of law. Both of these cases are distinguishable. For example, in *Beseau*, the court found that sexual harassment did not occur because there was no evidence in the record that the harasser was motivated by sexual desire, no touching or exposure of intimate body parts occurred, and plaintiff did not report the harassment to a person of authority before resigning from his employment. 2006 WL 2795716, at *3-5. The parties do not dispute that Ms. Mondragon physically touched Lints, exposed the top of her breasts to him, and expressed a sexual interest in him. *Supra*, Undisputed Material Facts, ¶ 2. *Matherne* is similarly distinguishable and non-binding upon this court.

[98] Defendants acknowledge that for purposes of the summary judgment motion, White Knight had knowledge of the sexual harassment when Lints reported Ms. Mondragon's behavior to his supervisor, Mr. Nauman.

[99] *Debord v. Mercy Health Sys. Of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013).

[100] *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001).

Lints.[101] But they argue that White Knight is not liable because they immediately addressed and effectively stopped Ms. Mondragon's harassing conduct.[102]

Lints reported Ms. Mondragon's behavior to his supervisor, Mr. Nauman;[103] however, it is unclear whether Mr. Nauman actually spoke with Ms. Mondragon or took any other action. White Knight did not prohibit Ms. Mondragon from having further verbal or physical contact with Lints. Instead, after Lints's report, Ms. Mondragon, presumably at White Knight's direction, trained Lints on a piece of machinery.[104] Requiring, or at least encouraging, Ms. Mondragon and Lints to continue to interact with one another does not appear to be "reasonably calculated to end the harassment."[105] However, Lints testified that Ms. Mondragon's behavior toward him did diminish at least to some degree after his report to Mr. Nauman.[106] In his response, Lints seeks to back away from his prior statements that Ms. Mondragon's sexual harassment had ceased.[107] Lints's statements raise some credibility issues; however, a jury could reasonably infer White Knight's liability.

Overall, disputed issues of material fact exist, particularly as to whether White Knight took adequate remedial and preventative action. Lints complained to the individuals he believed to be his supervisors during his first two to two-and-a-half weeks at White Knight. In response to discovery, White Knight has not identified any specific steps or actions taken to investigate

---

[101] Motion for Summary Judgment at 14.

[102] *Id.*

[103] *Supra*, Undisputed Material Facts ¶¶ 5-6.

[104] *Id.* ¶ 7.

[105] *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1245 (10th Cir. 2001).

[106] *Supra*, Undisputed Material Facts ¶ 10.

[107] Plaintiff's Opposition to Summary Judgment at 4-5, 26-27.

Lints's complaints or to address them.[108] The first documented action produced by White Knight admonishing Ms. Mondragon for her behavior is dated after Lints's was terminated—possibly because Ms. Mondragon had continued her behavior with other employees.[109] Therefore, summary judgment on Lints's sexual harassment claim is denied.

**Genuine issues of material fact exist regarding Lints's claim for retaliation**

In order to establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.[110] "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful [under the law]."[111]

Under the three-step framework established in *McDonnell Douglas Corp. v. Green*, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.[112] Once the plaintiff meets this burden, the burden shifts to the employer, who must proffer a legitimate, nondiscriminatory reason for the adverse action.[113] Then, the burden shifts back to the plaintiff to establish that the proffered reasons are pretextual.[114] A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[108] Plaintiff's Opposition to Summary Judgment, Exhibit C, Defendants' Objections and Responses to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, Answer to Interrogatory Nos. 3, 5.

[109] *Supra*, Undisputed Material Facts ¶ 20.

[110] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). Motion for Summary Judgment at 23, n.5.

[111] *Hinds v. Sprint/United Management Co.*, 523 F. 3d 1187, 1203 (10th Cir. 2008).

[112] 411 U.S. 792 (1973).

[113] *See PVNF, LLC*, 487 F. 3d at 804.

[114] *Id.*

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[115] "Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation."[116]

White Knight acknowledges that, based on the close temporal proximity between Lints's complaint to Mr. Simmons and his termination, Lints has met his prima facie burden.[117] However, White Knight argues that Lints was legitimately terminated for excessive absenteeism because he missed "more than 2 days a month that are allowed in the Employee Handbook."[118] Although White Knight has articulated a legitimate, nondiscriminatory reason for terminating Lints, a jury could reasonably infer that White Knight's proffered reason for his termination is pretextual.

Lints was terminated the day after he submitted his complaint to White Knight management in a meeting that discussed his sexual harassment complaint. Whether White Knight's attendance policy required strict enforcement and its application to Lints is also in dispute. Lints missed several days from work, but he has evidence that he communicated with his supervisor regarding his absences and received approval for the days missed.[119] Overall, a

---

[115] *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997).

[116] *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000).

[117] Defendant's Motion for Summary Judgment at 24-25, docket no. 72. Close temporal proximity between protected conduct and an adverse action is sufficient to demonstrate causation for the purpose of establishing a prima facie case of retaliation. *Annett v. Univ. of Kan*., 371 F.3d 1233, 1239-40 (10th Cir. 2004).

[118] Defendant's Motion for Summary Judgment at 26.

[119] *Supra*, Undisputed Material Facts ¶¶ 15-17.

jury may infer that White Knight's proffered explanation for Lints's termination was pretextual. Therefore, summary judgment on Lints's retaliation claim is denied.

<b>Lints's Motion for Partial Summary Judgment</b>

Lints alleges that White Knight either lacks evidence to support its affirmative defenses; the affirmative defenses are inapplicable; or they fail as a matter of law.[120] When the movant "chooses to show that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial, it must make more than simple conclusory assertions to that effect, otherwise summary judgment 'would be converted into a tool for harassment.'"[121] The movant "must affirmatively demonstrate that there is no evidence in the record" to prevail on his motion.[122]

In discovery requests as part of this action, Lints asked White Knight to identify the factual basis for each of its affirmative defenses raised.[123] White Knight had the opportunity to present evidence in support of its affirmative defenses, but instead, White Knight made general objections to the interrogatory and declined to answer.[124] Each of White Knight's affirmative defenses will be addressed below in light of the facts, or lack thereof, presented by the parties.

**Lints has stated a claim upon which relief can be granted warranting summary judgment on White Knight's second affirmative defense**

In its second defense, White Knight claims that "[Lints's] allegations fail to state a claim upon which relief can be granted against [White Knight]." Lints's Second Amended Complaint

---

[120] Plaintiff's Motion for Partial Summary Judgment, docket no. 71.

[121] *Eaves v. Fireman's Fund Ins. Cos.*, 148 F. App'x 696, 699-700 (10th Cir. 2005) (citing *Windon Third Oil & Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 345-46 n.7 (10th Cir. 1986)).

[122] *Id.*

[123] Plaintiff's Motion for Partial Summary Judgment ¶ 16; Defendants' Opposition to Partial Summary Judgment ¶ 16.

[124] *Id.*

("Complaint") sets forth two causes of action under Title VII of the Civil Rights Act:[125] (1) Sex Discrimination in Employment – Sexual Harassment; and (2) Sex Discrimination in Employment – Retaliation.[126] White Knight previously sought partial judgment on the pleadings, alleging that the Complaint failed to state a claim for sexual harassment.[127] White Knight's motion for partial judgment on the pleadings was denied.[128] White Knight acknowledges that the ruling on its prior motion for partial judgment forecloses its second defense on Lints's sexual harassment claim.[129] However, White Knight maintains that Lints failed to plead sufficient allegations to establish a cause of action for retaliation.

The standard to establish a prima facie case for retaliation has already been discussed in relation to White Knight's Motion for Summary Judgment. Under that standard, Lints has pled sufficient allegations to establish a case of action for retaliation. Summary judgment is granted, striking White Knight's second defense.

## Lints timely filed his Complaint warranting summary judgment on White Knight's third defense of failure to file within the limitation period

White Knight's third defense claims that "[t]o the extent that any of [Lints's] claims were filed outside the applicable limitations period, those claims are barred." More specifically, White Knight alleges that Lints was required to initiate his suit within 90 days of the date that the Notice of Right to Sue was issued by the EEOC (i.e., by September 13, 2015).[130] However, Lints correctly identifies the timeframe to file suit as within 90 days of *receiving* the Notice. The Tenth

---

[125] 42 U.S.C. § 2000e et seq.

[126] Second Amended Complaint, docket no. 33.

[127] Motion for Partial Judgment on the Pleadings, docket no. 43, filed July 17, 2017.

[128] Order Denying Motion for Judgment on the Pleadings, docket no. 53, entered December 14, 2017.

[129] Defendants' Opposition to Partial Summary Judgment at 14.

[130] Defendants' Opposition to Partial Summary Judgment at 15.

Circuit has held that notice is presumed to be received by the addressee either three or five days after issuance.[131] The Notice of Right to Sue was issued on June 15, 2015. Therefore, the earliest deadline for Lints to file suit (under a three-day presumption) was September 16, 2015. Lints timely filed suit on September 11, 2015.[132] Summary Judgment is granted, striking White Knight's third defense of failure to file within the limitations period.

**Lints's claims are not barred under the doctrine of estoppel or laches, warranting summary judgment on White Knight's eight defense**

White Knight's eighth defense states: "[Lints's] claims are barred, in whole or in part, by the doctrines of waiver, estoppel, release, consent, payment, license, and/or laches." Lints asserts that White Knight has not produced any evidence in support of its eighth defense and that these doctrines do not apply to Lints's causes of action. The only potentially applicable defenses are estoppel and laches.

The defense of estoppel requires: (1) a representation by Lints; (2) a change of position by Lints; and (3) justifiable reliance upon such representation by White Knight to its detriment.[133] During his second meeting with Mr. Simmons on April 28, 2018, Lints advised Mr. Simmons that Ms. Mondragon's sexual harassment had stopped after Mr. Nauman spoke with her two months prior.[134] White Knight alleges that it relied upon the April 28th representations made by Lints and did not take further action regarding Ms. Mondragon's behavior because they believed that the sexual harassment had stopped. However, the timeline of events does not support White Knight's position that it relied upon Lints's representations to its

---

[131] *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001).

[132] Complaint, docket no. 2.

[133] *Lehi Roller Mills Co. v. Cal-Agrex, Inc.*, No. 2:06-CV-1001 TS, 2011 WL 1233130, at *15-16 (D. Utah Mar. 31, 2011).

[134] Defendants' Opposition to Partial Summary Judgment at 19.

detriment. On April 27th, Lints clearly told Mr. Simmons that he had been sexually harassed by Ms. Mondragon. Lints also told Mr. Simmons the very next day (April 28th) that Ms. Mondragon's behavior toward him had diminished. The exact representation made by Lints to Mr. Simmons on April 28th is irrelevant because White Knight immediately terminated Lints on April 28th. There was no time for White Knight to have relied upon Lints's representations to its detriment, given that the representation and termination essentially occurred simultaneously.

The defense of laches also fails. "In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay."[135] White Knight argues that Lints unreasonably delayed asserting his claims by waiting three (3) years to request a Notice of Right to Sue from the EEOC. Lints disputes this argument and points to other jurisdictions that have held an employee's decision to rely on the commission's administrative process before initiating a private suit not to be inexcusable delay.[136] Lints's decision to wait until completion of the EEOC process was not inexcusable delay. Moreover, White Knight was not materially prejudiced by the delay. White Knight was put on notice of potential litigation after Lints filed his charge with the EEOC in November 2010. At that time, White Knight could have taken steps to preserve its defense in anticipation of a court action.[137] Therefore, summary judgment is granted, striking White Knight's eighth defense.

---

[135] *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 949 (10th Cir. 2002).

[136] *See Holsey v. Armour & Co.,* 743 F.2d 199, 211 (4th Cir. 1984) (4 ½ year delay while awaiting completion of EEOC process was not unreasonable); *Brown v. Continental Can Co.,* 765 F.2d 810 (9th Cir.1985) (complainants are not required to terminate the administrative process by requesting a notice of right to sue); *Howard v. Roadway Exp., Inc.,* 726 F.2d 1529 (11th Cir.1984) (5 year delay while awaiting completion of EEOC process was not inexcusable); *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1256-57, *adopted,* 619 F.2d 459, 463 (5th Cir. 1980) (en banc), *aff'd,* 452 U.S. 89 (1981) (9 year delay while awaiting completion of EEOC process was not unreasonable).

[137] *EEOC v. Jetstream Ground Services, Inc.,* 134 F. Supp. 3d 1298, 1332-33 (D. Colo. 2015) ("[T]he Title VII defendant is alerted to the possibility of an enforcement suit within 10 days after charge has been filed. This prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a

**To avoid confusion, summary judgment is appropriate on White Knight's tenth defense**

In its tenth defense, White Knight asserts that "Graco Fluid Handling (A) Inc. lacks information and belief to admit or deny the allegations of the Second Amended Complaint and accordingly denies the same." "By its nature, an affirmative defense does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven."[138] "Where a so-called 'affirmative defense' does nothing more than rebut a plaintiff's claims directly, the defense should be stricken."[139] "Lack of information" is a general denial and not an affirmative defense. To avoid redundancy and confusion of the jury at trial, White Knight's tenth defenses is stricken. White Knight may still defend against Lints's allegations at trial and assert its lack of knowledge where appropriate.

**White Knight did not contest summary judgment on its fourth, seventh, and ninth affirmative defenses, therefore summary judgment on these defenses is appropriate.**

Lints asserts that White Knight has not produced any evidence in support of the following defenses:[140]

> Fourth Defense: "To the extent that Plaintiff has failed to satisfy and/or exhaust the statutory, jurisdictional, or administrative perquisites for maintaining any of his claims, those claims are barred."

> Seventh Defense: "Some or all of Plaintiff's claims and/or alleged damages may be barred and/or limited by the after-acquired evidence doctrine."

---

court action. Moreover, during the pendency of EEOC administrative proceedings, a potential defendant is kept informed of the progress of the action.")

[138] *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2014) (citing *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011)

[139] *Id. See also Joe Hand Promotions, Inc. v. Clark*, Case No. 16-2154-JTM, 2016 WL 7210608, at *2 (D. Kan. Dec. 13, 2016) ( "Where an 'affirmative defense' is actually a denial of liability, a motion to strike may be properly granted.")

[140] Plaintiff's Opposition to Partial Summary Judgment, Appendix of Evidence, Exhibit C, Defendants' Objections and Responses to Plaintiff's First Set of Requests for Admission, Interrogatories, and Requests for Production of Documents, Answer to Interrogatory No. 6.

Ninth Defense: "Plaintiff's claims are barred, in whole or in part, by the doctrines of setoff and/or recoupment."

White Knight did not contest dismissal of these defenses.[141] Accordingly, summary judgment is granted with respect to White Knight's fourth, seventh, and ninth defenses.

**White Knight's fifth, sixth, and eleventh defenses survive summary judgment.**

The undisputed facts include support for White Knight's fifth defense, which claims "[Lints] cannot recover damages to the extent that he has failed to mitigate his alleged damages." To establish this affirmative defense, "the employer has the burden of showing that the discriminatee did not exercise reasonable diligence in mitigating the damages caused by the employer's illegal actions."[142] "[T]he defense of failure to mitigate damages will not be presented to the jury unless the trial court determines there is sufficient evidence to support it."[143] An employer may satisfy its burden to show that the employee failed to use reasonable diligence by showing that "the employee was not 'ready, willing and available' for employment by withdrawing from the job market" in order to follow other pursuits, such as returning to school as a full-time student.[144]

White Knight argues that Lints's failure to obtain work was not from lack of opportunity, but instead because he did not seek employment or failed to keep the jobs he found.[145] More specifically, White Knight alleges that Lints was not ready, willing, and available for employment because he made the decision to withdraw from the job market and to become a

---

[141] Defendant's Opposition to Partial Summary Judgment, docket no. 72; Reply in Support of Plaintiff's Motion for Partial Summary Judgment at 5, docket no. 89.

[142] *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 937 (10th Cir. 1979).

[143] *United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1231(10th Cir. 2000).

[144] *Goodman v. Fort Howard Corp.*, 30 F.3d 141, at *4 (10th Cir. 1994).

[145] *See Weatherspoon v. Andrews & Co.*, 1983 U.S. Dist. LEXIS 14530, at *10 (D. Colo. 1983) (reducing an award of back pay under Title VII for the time period when the plaintiff failed to mitigate her damages by not seeking employment).

full-time speed skater. Evidence presented by White Knight supports this. Lints's employment history after his termination with White Knight is sporadic and short term, often lasting for only a couple months at a time.[146] In 2014, Lints began focusing entirely on his speed skating goals.[147] Whether Lints exercised reasonable diligence in mitigating his damages is an appropriate factual question for the jury at trial.

In its sixth defense, White Knight claims that "[a]ll actions regarding [Lints's] employment were undertaken without malice for legitimate, non-discriminatory, and nonretaliatory reasons." White Knight asserts that it had a legitimate reason for terminating Lints, as discussed above in its Motion for Summary Judgment. Summary judgment on Lints's retaliation claim was denied. For the same reason, summary judgment on White Knight's sixth defense is denied. Whether White Knight's asserted basis for terminating Lints was legitimate or merely a pretext is reserved for trial.

Finally, White Knight's eleventh defense states that "Graco Fluid Handling (A), Inc. should be dismissed from this action, as [Lints] cannot establish liability under a theory of successor liability." Lints asserts that Defendant Graco Fluid Handling bears successor liability for all Title VII employment discrimination claims that Lints has against White Knight.[148] However, Lints fails to engage in any further legal or factual analysis to establish that the defense should be stricken.

The general rule for successor liability is that "where one corporation sells its assets to another corporation, the latter is not liable for the former's debts unless the transaction fits within

[146] Defendants' Opposition to Partial Summary Judgment at 16; *supra,* Undisputed Material Facts ¶¶ 21-27.

[147] *Supra*, Undisputed Material Facts ¶ 28.

[148] Second Amended Complaint ¶ 19 at 3.

well-defined exceptions."[149] In order to overcome the general rule that a successor company is not liable, and to hold Graco Fluid Handling responsible for White Knight's actions, Lints must show that this case fits within one of the well-defined exceptions. Lints makes no effort to do so. Therefore, whether successor liability is established will be determined at trial. The defense survives.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that White Knight's Motion for Summary Judgment[150] is DENIED.

IT IS FURTHER ORDERED that Lints's Motion for Partial Summary Judgment[151] is GRANTED in part and DENIED in part. Summary judgment is granted against White Knight on its second, third, fourth, seventh, eighth, ninth, and tenth affirmative defenses. White Knight's fifth, sixth, and eleventh affirmative defenses remain.

Dated October 15, 2018.

BY THE COURT:

David Nuffer
United States District Judge

---

[149] *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 224 (10th Cir. 1982).

[150] Docket no. 72.

[151] Docket no. 71.